**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ndeckant@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PAOLO ROMÉO SAMACO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE, LLC,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Paolo Roméo Samaco ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, make the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

## NATURE OF ACTION

1. Defendant Google, LLC ("Defendant" or "Google") has developed and provides a customer service product called Google Cloud Contact Center AI (hereafter "GCCCAI") as a software-as-a-service.

2. GCCCAI is employed by numerous entities, including Verizon Communications, Inc. ("Verizon"), to monitor voice and text-based interactions.

3. Verizon contracted with Google and its GCCCAI service to respond to customers who call from California and across the nation to, among other things, receive support through these channels ("Contact Centers").

4. By virtue of providing the GCCCAI service, however, Defendant also records, accesses, reads, and learns the contents of conversations between Californians and customer service representatives. And, crucially, neither Defendant nor Verizon procure the prior consent, express or otherwise, of any person who interacts with Verizon's customer service agents, prior to Defendant recording, accessing, reading, and learning the contents of conversations between Californians and Verizon's customer service representatives.

5. Through its use of GCCCAI, Defendant has failed to comply with the California Invasion of Privacy Act ("CIPA") § 637.5.

6. Plaintiff brings this action to prevent Defendant from further violating the privacy rights of California residents, and to recover statutory damages for Defendant having recorded, accessed, read, and learned the contents of conversations between Californians and Verizon without procuring prior consent, in contravention of CIPA § 637.5.

## PARTIES

7. Plaintiff Paolo Roméo Samaco resides in Los Angeles, California and has an intent to remain there, and is therefore a citizen of California. Mr. Samaco is an account holder and subscriber to Verizon's Wi-Fi service and mobile satellite services and has made numerous calls to Verizon in the past years, including as recent as March 2026. He was in California when he spoke to a representative from Verizon over the phone from his home.

8. Defendant Google, Inc. ("Google" or "Defendant") is a Delaware limited liability company, with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California, 94043. Google does business throughout California and the entirety of the United States. Google provides a customer contact and support solution called "Google Cloud Contact Center AI," which is at issue here and described more fully below.

9. At all relevant times, Verizon contracted with Google and its GCCCAI service.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action where there are more than 100 members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one member of the putative Class is a citizen of a state different from Defendant.

11. This Court has personal jurisdiction over Defendant because Defendant's principal place of business is in California.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391 Defendant resides in this District.

## FACTUAL BACKGROUND

### I. THE CALIFORNIA INVASION OF PRIVACY ACT

13. The California Legislature enacted the Invasion of Privacy Act to protect certain privacy rights of California citizens. The legislature expressly recognized that "the development of new devices and techniques for the purpose of eavesdropping upon private communications ...

has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Cal. Penal Code § 630.

14. As the California Supreme Court has held in explaining the legislative purpose behind CIPA:

> While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its *simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device.*
>
> As one commentator has noted, such secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements.

*Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985) (emphasis added; internal citations omitted).

15. As part of CIPA, the California Legislature enacted § 637.5, which prohibits in pertinent part any person who (a) "owns, controls, operates, or manages a satellite or cable television corporation, or who leases channels on a satellite or cable system" from (1) "[u]se[ing] any electronic device to record, transmit, or observe any events or listen to, record, or monitor any conversations that take place inside a subscriber's residence, workplace, or place of business, without obtaining the express written consent of the subscriber." Cal. Penal Code § 637.5(a)(1). Moreover, (h) "[a]ny person receiving subscriber information from a satellite or cable television corporation shall be subject to the provisions of this section." Cal. Penal Code § 637.5(h).

16. Individuals may bring an action against the violator of CIPA § 637.5 for $5,000 per violation. Cal. Penal Code § 637.2.

## II. DEFENDANT VIOLATES THE CALIFORNIA INVASION OF PRIVACY ACT § 637.5

17. GCCCAI is a "human-like generative AI powered contact center" that, among other things, "empowers human agents with continuous support during their calls and chats by identifying intent and providing real-time, step-by-step assistance" and "uses natural language

processing to identify call drivers and sentiment that helps contact center managers learn about customer interactions to improve call outcomes."[1]

18. When a consumer calls into a GCCCAI-powered contact center, they may first be presented with a virtual agent provided by Google. Virtual agents are not identified as being provided by Google, and so consumers reasonably believe the virtual agent is provided by the company they are calling.

19. Regardless, if a consumer requests to speak with a human agent, the virtual agent transfers the consumer – along with a transcript of the conversation up until that point – to a human agent:[2]




20. Crucially, once a consumer is routed from the virtual agent to the human agent, they expect the conversation is only between themselves and the human customer service agent. They do not expect, nor do they have any reason to suspect, that the virtual agent or any sort of third party is listening in on the conversation. After all, that is the point of being transferred.

---

[1] CONTACT CENTER AI, https://cloud.google.com/solutions/contact-center.

[2] HOW DOES GOOGLE CLOUD CONTACT CENTER AI WORK?, https://youtu.be/i8b4pEYIsIM?si=NjkXMwHwCJXOIKyz&t=158.

21. And yet, contrary to those expectations, Google is *still listening* even when a call is transferred from a virtual agent to a human agent. Specifically, a Google "session manager monitors the state of the conversation" with the human agent:[3]




22. Google, through GCCCAI, does not simply listen in on the conversation between the consumer and the human agent though. It also "[t]ranscribe[s] calls in real time for agents to reference during the call or for analysis after the call."[4]

23. In addition, Google, through GCCCAI, "grabs the context of the conversation to suggest articles and real-time, step-by-step guidance" to the agent.[5] In other words, Google, through GCCCAI, is actively analyzing the real-time contents of conversations between companies like the Verizon and their customers.

[3] HOW DOES GOOGLE CLOUD CONTACT CENTER AI WORK?, https://youtu.be/i8b4pEYIsIM?si=NjkXMwHwCJXOIKyz&t=160.

[4] AGENT ASSIST, https://cloud.google.com/agent-assist?hl=en.

[5] HOW DOES GOOGLE CLOUD CONTACT CENTER AI WORK?, https://youtu.be/i8b4pEYIsIM?si=szJ4Bfl9egcT5p1N&t=174.




24. Further, through GCCCAI, Google provides "smart replies" to the agent based on Google's analysis of the real-time contents of the conversations:[6]




[6] How Does Google Cloud Contact Center AI Work?, https://youtu.be/i8b4pEYIsIM?si=DTnLsP36i4vO1NLD&t=188.

25. For years, Verizon has contracted with Google to listen in on conversations through GCCCAI, and for Google to provide at least all of the features mentioned above.

26. Recently, Google integrated generative AI ("Gen AI") in its CCAI products to "improve[] the development process, shifting from a world of interactive voice response (IVR) and scripted chatbots to a world of intelligent steering and assistive virtual agents."[7]

27. In a press release in April 2025, Google announced its collaboration with Verizon "showcasing how the integration of Google Cloud's generative AI (gen AI) technology – including the Vertex AI platform, Gemini models, and Customer Engagement Suite – is significantly transforming Verizon's frontline operations" with the aim "to streamline customer interactions and reduce its employees' cognitive load."[8]

28. Specifically, Verizon integrated Vertex AI and Gemini models into its GCCCAI platform to provide "human-centered tools [which] function as an intelligent AI partner, delivering optimal guidance and relevant offers. Crucially, these innovations empower Verizon's team to build stronger relationships with customers, recognizing the value of every interaction."[9] One such tool is the "Personal Research Assistant," a conversational AI agent that provides "Verizon's frontline workers with real-time, context-aware, and personalized answers to customer inquiries, eliminating the need to manually search through extensive knowledge bases. Operating proactively, the assistant suggests relevant questions customers may have and provides immediate answers when agents type in a question."[10]

---

[7] TRANSFORMING THE CONTACT CENTER WITH GENERATIVE AI, https://cloud.google.com/blog/topics/telecommunications/how-generative-ai-can-be-used-in-the-contact-center

[8] GOOGLE CLOUD AND VERIZON DRIVE CUSTOMER EXPERIENCE IMPROVEMENTS FOR VERIZON CUSTOMERS WITH GEMINI INTEGRATION, https://www.googlecloudpresscorner.com/2025-04-09-Google-Cloud-and-Verizon-Drive-Customer-Experience-Improvements-for-Verizon-Customers-with-Gemini-Integration.

[9] *Id.*

[10] *Id.*

29. Another tool Google provides Verizon is the "Problem Solver AI agent," which "integrates Verizon's personalization platform with Google Cloud's gen AI to deliver advanced troubleshooting support, assisting in the resolution of customer issues more quickly and effectively." Google asserts that "[t]his integration is particularly beneficial for new customer care reps at Verizon, enabling them to resolve complex issues with greater confidence and leading to a significant improvement in issue resolution time."[11]

30. Google profits from its provision of the GCCCAI service. For instance, Google charges its clients "$0.03 per minute" for "Agent Assist for voice sessions with Summarization and other assist features."[12]

31. When GCCCAI is used on a telephone conversation, it is not like a tape recorder, or a "tool" used by one party to record the other. Instead, GCCCAI involves Google – a separate and distinct third-party entity from the parties to the conversation – using GCCCAI to eavesdrop upon and record a conversation to which it is not a party. This is so because Google itself is collecting the contents of any conversation, as alleged above. Google also needs access to the data in order to service customers like Verizon, such as through providing recommendations, analyzing customer intent, and transcribing conversations in real time.

32. Google has the capability to use the contents of conversations it collects through GCCCAI. For instance, in its "Service Specific Terms," Google has a section pertaining to "AI/MIL Services," which includes GCCCAI.[13] In this section, Google states it can use "Customer Data" to "train or fine-tune any AI/ML models" with its clients' permission (but not the end user's permission).[14] Thus, Google has the capability to use the wiretapped data it collects through GCCCAI to improve its AI/ML models (i.e., to improve the AI-based products and services Google provides).

---

[11] *Id.*

[12] AGENT ASSIST PRICING, https://cloud.google.com/agent-assist/pricing.

[13] SERVICE SPECIFIC TERMS, https://cloud.google.com/terms/service-terms.

[14] *Id.*

33. During consumers' calls to the Verizon Contact Centers, Google and Verizon fail to inform consumers, prior to any recording: (i) that Google, a third party, is listening in on consumers' communications, (ii) that Google, a third party, is tapping or otherwise making an unauthorized connection with the consumer's telephone conversation using GCCCAI, and (iii) that the content of consumers' confidential communications with the Contact Centers are being recorded, collected, intercepted, and analyzed by a Google, a third party, using GCCCAI.

34. The GCCCAI service was designed to record and analyze real-time phone conversations. As such, when Google provided the GCCCAI service and its features to Verizon, Google understood and therefore intended to record the communications of customers who called into the Contact Centers.

35. At times, Google listens to, records, and monitors conversations that take place during customer calls to the Contact Centers regardless of whether these conversations take place inside the customer's residence, workplace, or place of business.

36. Therefore, Defendant's conduct violates the rights of Californians set forth in CIPA § 637.5.

## III. PLAINTIFF'S EXPERIENCE

37. Plaintiff Samaco has called Verizon's Contact Center several times, including most recently in or about March 2026, from his home.

38. Plaintiff Samaco holds a Verizon account and is a subscriber to Verizon's Wi-Fi service and mobile satellite services.

39. In these conversations, Plaintiff Samaco reasonably expected his conversations with Verizon to be only between himself and Verizon.

40. During these calls with Verizon, Plaintiff Samaco first interacted with a "virtual agent." Plaintiff Samaco was not aware, nor did he have any reason to suspect, that the virtual agent was being provided by a third party, Google, rather than Verizon.

41. On these calls, Plaintiff Samaco then asked to be transferred from the virtual agent to a human agent. When Plaintiff Samaco's call was transferred to the human agent, he reasonably

expected the conversation would be only between himself and the Verizon human customer service agent. This is because Mr. Samaco discussed his bill and shared personal information regarding his current situation to explain the importance of maintaining the same telephone number. Mr. Samaco has also shared his credit card information associated with his account. He did not expect or have any reason to expect that the virtual agent, let alone a virtual agent provided by Google, a third party, was listening in on his conversation.

42. Nonetheless, Google, through GCCCAI, eavesdropped on Plaintiff Samaco's entire conversation with the Verizon human customer service agent. Specifically, a Google session manager monitored the conversation between Plaintiff and Verizon, and Google, through GCCCAI and its features, including Vertex AI, transcribed Plaintiff Samaco's conversations in real time, analyzed the context of Plaintiff Samaco's conversations with Verizon using natural language processing, and suggested "smart replies" and news articles to the Verizon agent Plaintiff was communicating with.

43. Through the aforementioned process, Google read and learned, in real time, the contents of Plaintiff Samaco's conversation with Verizon.

44. Neither Verizon nor Google procured Plaintiff Samaco's prior consent, express or otherwise, to have Defendant eavesdrop on Plaintiff Samaco's conversation with Verizon. Nor did Plaintiff Samaco give his prior consent, express or otherwise, to Google or Verizon to allow Defendant to wiretap his communications with Verizon.

45. Plaintiff Samaco has, therefore, had his privacy severely invaded and been exposed to the risks and harmful conditions created by Defendant's violations of CIPA alleged herein.

## CLASS ALLEGATIONS

46. Plaintiff Samaco seeks to represent a Class defined as all residents of the State of California who have a Verizon subscription and called Verizon from their residence, workplace, or place of business in California and had their conversations with Verizon recorded, monitored, or listened to by Google (the "Class").

47. The following people are excluded from the Class: (1) any Judge presiding over this action and members of his or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest (including current and former employees, officers, or directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

48. **Numerosity:** The number of persons within the Class is substantial and believed to amount to thousands, if not millions of persons. It is, therefore, impractical to join each member of the Class as a named Plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation. Moreover, the Class is ascertainable and identifiable from records belonging to Defendant and Verizon.

49. **Commonality and Predominance:** There are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary between members of the Class, and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to, the following:

(a) Whether Defendant violated CIPA § 637.5;

(b) Whether Defendant sought or obtained prior consent – express or otherwise – from Plaintiff and the Class; and

(c) Whether Plaintiff and members of the Class are entitled to actual and/or statutory damages for the aforementioned violations.

50. **Typicality:** The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other members of the Class, had the content of their communications read, learned, analyzed, and/or examined by Google.

51. **Adequate Representation:** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of the Class Members will be fairly and adequately protected by Plaintiff and his counsel.

52. **Superiority:** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of members of the Class. Each individual member of the Class may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION

### COUNT I
### Violation of the California Invasion of Privacy Act, Cal. Penal Code § 637.5

53. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

54. Plaintiff Samaco brings this claim individually and on behalf of the members of the Class against Defendant.

55. Under CIPA § 637.5(a)(1), "[n]o person who owns, controls, operates, or manages a satellite or cable television corporation, or who leases channels on a satellite or cable system" shall "[u]se any electronic device to record, transmit, or observe any events or listen to, record, or

monitor any conversations that take place inside a subscriber's residence, workplace, or place of business, without obtaining the express written consent of the subscriber."

56. Further, "[a]ny person receiving subscriber information from a satellite or cable television corporation shall be subject to the provisions of this section." CIPA § 637.5(h).

57. Verizon is a "cable television corporation" because it is a "corporation or firm which transmits television programs by cable to subscribers for a fee." Cal. Pub. Util. § 216.4 (definition of term incorporated by CIPA § 637.5(f)(1)).

58. GCCCAI is a "electronic device" for purposes of CIPA § 637.5(a)(1).

59. Google is a separate legal entity that offers "'software-as-a-service' and not merely a passive device." *Saleh*, 562 F. Supp. 3d at 520. Accordingly, as an LLC, Google is a "person" for purposes of CIPA § 637.5(h) as defined under CIPA § 637.5(f)(3).

60. Plaintiff purchases, subscribes to, and receives Verizon's Wi-Fi services, constituting Plaintiff and similarly situated Class Members as subscribers to Verizon, within the meaning of CIPA § 637.5.

61. At all relevant times, through GCCCAI and its features, including Vertex AI, Defendant received subscriber information from Verizon—including Plaintiff Samaco's and Class Members' subscriber information—by using GCCCAI and its features to listen to, record, or monitor conversations that took place inside a subscriber's residence, workplace, or place of business when subscribers would call Verizon's Contact Centers.

62. Subscribers, Plaintiff Samaco and members of the Class, did not consent to any of Defendant's actions discussed above.

63. The violation of CIPA § 637.5 constitutes an invasion of privacy sufficient to confer Article III standing.

64. Pursuant to Cal. Penal Code § 637.2, Plaintiff and Class Members have been injured by the violations of CIPA § 637.5, and each seeks statutory damages of $5,000 for each of Google's violations of CIPA § 637.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Class under Fed. R. Civ. P. 23, naming Plaintiff as the representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b) For an order declaring that Defendant's conduct violates the statute referenced herein;

(c) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d) For statutory damages of $5,000 for each violation of CIPA § 637.5;

(e) For pre- and post-judgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief; and

(g) For an order awarding and the Class their reasonable attorney's fees and expenses and costs of suit.

## JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury for all issues so triable.

Dated: March 17, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Neal J. Deckant*
Neal J. Deckant

Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ndeckant@bursor.com

*Attorneys for Plaintiff*